# In the United States District court
# Southern district of New York

Emmanuel Obiagwu.

      Plaintiff

V.

City of New York, New York Police Department,         **Amended Complaint**
Fire Department of New York,                            **1:24-cv-07892**
New York Presbyterian Hospital,
Brian Dobbins (in his individual & official capacity),      **JURY TRIAL DEMANDED**
Daniel Silverio (in his individual and official capacity),
Warren Ritter (in his individual and official capacity),
Jackson Mazariegos (in his individual and official capacity)
Kenneth De La Cruz (in his individual and official capacity)
Justin Jimenez (in their official capacity)
Samuel Yeboah (in their official capacity)
Whaner Arias (in their official capacity)
Yeuri Calderon (in their official capacity)
D. Fuller (in their official capacity)
S. Aguilar Agyemang (in their official capacity)

      Defendants.

## AMENDED COMPLAINT

### <u>JURY</u>
Plaintiff demands a trial by jury

### <u>INTRODUCTION</u>

1. Plaintiff Obiagwu is a law abiding civilian with no convictions and was not known to the defendants or in the location of the incident.

2. Obiagwu was engaged in first amendment protected activity when repeatedly assaulted by defendant Silverio for recording, then slammed to the ground and eventually wrongfully handcuffed, masked and arrested.

3. Filming outside government owned buildings and recording of anything that can be seen from public space constitutes protected activity under the first amendment. Obiagwu was next to a park on a sidewalk and on completely public space.

4. There's no expectation of privacy in public spaces therefore; Silverio's use of force on Obiagwu for filming him is unconstitutional.

5. Obiagwu was beaten, handcuffed, kidnapped and forced to a psychiatric hospital with no signs of mental health issues.

6. Defendant Silverio lied and fabricated facts to EMS to justify forcefully escorting Obiagwu to a mental hospital claiming that Obiagwu threw himself to the ground when video evidence shows him slam Obiagwu to the ground for not turning off his camera.

7. The NYPD officers along with New York Presbyterian hospital security staffs who are not medical professionals forcefully practiced unauthorized medical procedures on Obiagwu.

8. The New York Presbyterian hospital nurses allowed and did not intervene in the medical malpractice upon screaming and cries for help from plaintiff.

9. Obiagwu who is an African was called a monkey by defendant Warren Ritter who identifies as white.

**<u>PARTIES</u>**:

10. Plaintiff Emmanuel Obiagwu (hereinafter "Obiagwu" or "plaintiff") is a citizen of the state of New Jersey and the United States of America.

11. Defendant New York city (hereinafter "City" or "the city") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New  York acting through the New York City Police Department (or "NYPD"), was responsible for the policies, practices, supervision, discipline, training, implementation and conduct of all NYPD matters and was responsible for the appointment of commissioner, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel follows the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department and Fire Department Of New York.

12. Defendant New York police department (hereinafter "NYPD") is a department within New York City acting under color of law. Tasked with the responsibility of upholding constitutional rights of the people and fighting crimes not committing them.

13. Defendant Fire Department Of New York City (hereinafter "FDNY" or "EMS") is a department within and owned by New York City funded through taxes.

14. Defendant Daniel Silverio is a detective officer of the NYPD with a violent history and over 65 allegations and complaints and 4 lawsuits on his records while operating in NewYork city acting under color of law. He is sued in his individual capacity and official capacity.

15. Defendant NewYork Presbyterian Hospital (hereinafter "NYP") is a medical center operating in New York City and is an "employer" within the meaning of 29 U.S.C. §203(d), 29 U.S.C. § 152(2), §2611(4)(A), (B), 42 U.S.C. §12111(5)(A), and Executive Law §292(5). At all relevant times, the Hospital acted by and through its nurses and trained security staff including Justin Jimenez, Samuel Yeboah, Whaner Arias, Yeuri Calderon, D. Fuller and S. Aguilar Agyemang and has liability under, inter alia, the doctrine of respondeat superior.

16. Defendant Brian Dobbins is a detective officer of the NYPD operating in NewYork city acting under color of law. He is sued in his individual and official capacity.

17. Defendant Warren Ritter is an officer of the NYPD operating in NewYork city acting under color of law. He is sued in his individual capacity and official capacity.

18. Defendant Jackson Mazariegos is an EMT/ EMS personnel for the FDNY acting under color of law. The FDNY is city owned and operated and funded through taxes. He is sued in his individual capacity and official capacity.

19. Defendant Kenneth De La Cruz is an EMS personnel for the FDNY acting under color of law. He is sued in his individual capacity and official capacity.

20. Justin Jimenez, Samuel Yeboah, Whaner Arias, Yeuri Calderon, D. Fuller and S. Aguilar Agyemang are all security staff of NYPH hospital. (Hereinafter "hospital security" or "security staff") Defendants:Justin

Jimenez, Samuel Yeboah, Whaner Arias, Yeuri Calderon, D. Fuller, and S. Aguilar Agyemang are security guards hired by NYPH they are sued in official and individual capacity.

### <u>Defendants addresses</u>
<u>Based on facts currently known</u>

EMT Jackson Mazariegos, Shield #2286
New York City Fire Department
**9 Metro Tech Center**
**Brooklyn, NY 11201**

EMT Kenneth De La Cruz, Shield# 1556
New York City Fire Department
**9 MetroTech Center**
**Brooklyn, NY 11201**

NYP Hospital security staffs.
Justin Jimenez;
Samuel Yeboah;
Whaner Arias;
Yeuri Calderon;
D. Fuller; and
S. Aguilar Agyemang
**622 West 168th Street,**
**New York, NY 10032.**
**Room 031**

### <u>JURISDICTION AND VENUE</u>

21. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1343

22. This Court has supplemental jurisdiction over the following state law claim pursuant to 28 U.S.C. §1367 in relation to the federal claims that it forms part of the same case under Article III of the U.S. Constitution.

23. This venue is proper in this District under 28 U.S.C. § 1391(b)(2). All of the events giving rise to this Complaint occurred within this District.

24. At all times relevant hereto, Defendants, Brian Dobbins, Daniel Silverio, Warren Ritter are citizens of the United States and resident of the State of NewYork and were acting under color of state law in their capacity as law enforcement officers employed by the City of New York.

## **FACTUAL BACKGROUND.**

25. On the morning of August 10, 2023 Obiagwu was filming on his cellphone along edgecomb ave and W170th st in Harlem New York .

26. The 33rd precinct is across the street where Plaintiff was filming.

27. While plaintiff was recording, Defendant Daniel Siverio exited a vehicle and approached Plaintiff aggressively in plain clothing and ordered him to stop filming.

28. At the time Silverio was estimated about 6ft 250lbs and pure muscle easily matching a professional body builder's physique with what appears to be a large size t-shirt squeezing his huge biceps. Obiagwu was a measly 6ft 180 lb with a slim build.

29. At no point did Silverio who was in plain clothing identify himself as an officer.

30. Silverio asked plaintiff "you good?" In which Obiagwu responded with a thumbs up and nodding of head indicating he is okay. Silverio asked again "excuse me, do you need something in here?" as Obiagwu stares at a parked van responding with "im good." Silverio, unsatisfied with both responses from plaintiff asked again "what are you doing?" and Obiagwu again responded "i don't need your help"

31. Silverio feeling unwelcomed by Obiagwu will reposition himself closer and move to the right side of Obiagwu and slap Obiagwu's phone which ultimately resulted in Obiagwu's hand being assaulted as well.

32. Obiagwu strengthened his grip on his phone and after Siverio's failed attempt at slapping the phone out of Obiagwu's hand he physically grabbed Obiagwu.

33. Silverio shuffled Obiagwu around like a little kid and shoved him causing Obiagwu to hit the parked van.

34. After shoving Obiagwu Silverio briefly points at his waist signaling he has a firearm as his fingers imitates a weapon.

35. Silverio moves closer as he sizes up a defenseless Obiagwu in a threatening manner saying "you can't record here".

36.  Silverio reaches and assaults Obiagwu again as he warned him to "stop recording me."

37. Silverio steps up again and swings his arm hitting Obiagwu about the fourth time warning him he can't record here as he steps closer with his index finger pointed at Obiagwu's head in an intimidating way with his chest out and strong and exclaims "you playing with me?"

38. Obiagwu nervously asked to be excused and was pushed again with a strong hand straight to his chest.

39. Silverio lifts up his shirt and flashed a firearm as he steps up again shoulder to shoulder with Obiagwu in a threatening manner while visibly infuriated, battering Obiagwu.

40. Obiagwu unable to defend himself against a firearm wielding bodybuilder while scared for his life begins making an attempt to safely backpedal away while simultaneously using a tree for cover but as he looks over his shoulders Silverio had gotten even closer within breathing space pinning Obiagwu between the van and a large tree with his gun still on display.

41. Obiagwu with nowhere to go Obiagwu is forced to stand still in fear as Silverio strikes him again.

42. Silverio runs around the tree to spontaneously ambush Obiagwu from his back lifting him up and slamming him to the ground against the concrete curb.



43.

44. After slamming Obiagwu to the ground, Silverio stands over him in a threatening way pointing his finger at Obiagwu's head and says "stop recording me" while still holding on to Obiagwu's backpack which proves he reached Obiagwu's back before slamming him.



45.

46. "Get up, get up" Silverio exclaims to Obiagwu on the ground as he subtly kicks him in the stomach before stepping over him.

47. At no point did Silverio identify himself as an officer while acting under color of law for the interest of NYPD.

48. Obiagwu requested an ambulance while on the ground

49. Silverio and other plain clothes officers laughed at plaintiff while he cried in pain begging for an ambulance.

50. Both uniformed and plain clothes officers such as Warren Ritter, Brian Dobbins NJ and unnamed officers responded to the scene outside the precinct with a disdained look at the plaintiff and instantly began mocking him.

51. After being thrown to the ground Obiagwu had one of his arm end up by the wheels of a parked car tire unable to move it with defendant Officer Ritter making distasteful mockery of him by say "he's changing the oil….he's checking the tire pressure"



52.

53. Getting laughs from his colleagues after the mockery of Obiagwu, Ritter would take it a step further referring to Obiagwu who is an African as a "spider monkey" which is highly racist and offensive not only to anyone in Obiagwu's situation but to anyone of African decent considering the long American racial history against blacks.

54. Officers on the scene can be heard discussing "PBA" paperwork "for the lawyer stuff". PBA stands for Police Benevolent Association which is a union which defends and provides legal representation for over 24,000 NYPD officers during lawsuits.

55. Obiagwu laid on the ground for approximately 33 minutes with no ambulance provided.

56. An ambulance operated by defendants Mazariegos and Dela cruz arrived who were actually dispatched to two blocks over for an unrelated situation and not for Obiagwu but due to poor training, unprofessional and disastrous management by the FDNY they arrived at the wrong incident.

57.  Upon ambulance arrival Obiagwu was questioned with basic credentials and cognitive function questions by Mazariegos to prove conscious awareness such as; what happened, what's your name?, what year is it?, where are you right now?,where does it hurt?. Obiagwu swiftly answered the questions correctly proving his mental state and awareness to not be questioned by the professional licensed medical first responders. Obiagwu also told Mazariegos he was slammed to the ground by an officer Mazariegos who have now spoken directly to Obiagwu and based on training and experience can appropriately determine a well state of mind but decided to disregard his trainings and take advice from NYPD officers who are not medical professionals.

58. Brian Dobbins can be heard saying "let's not record anymore" indicating Obiagwu must stop his cell phone recording

59. Obiagwu is free and not suspected of any crime or violation at this point nor does probable cause exist which makes these commands unlawful.

60. After getting help off the ground, Obiagwu notified both Mazariegos and Dela cruz that there were a couple of witnesses who saw what happened and will better explain the cause of the injuries to assist on the medical report based on what they saw and immediately the officers all stepped in closer to box in Obiagwu and stop him from trying to get the attention of the witnesses or locating them with officer Ritter making the first move grabbing Obiagwu left arm and twisting it as Obiagwu cried informing him that it is the injured arm which Ritter was pulling intentionally to cause pain.



61.

62. Mazariegos supported and helped  the officers in boxing Obiagwu in a corner so he doesn't go talk to witness who watched him get assaulted and will better explain what way Obiagwu was injured.

63. Ritter performed a military style takedown technique commonly used to take aggressive high level criminals down to the ground making them unable to resist with their own twisted arm being used against them



64. .

65. Image on the above right shows Obiagwu left shoulder twisted in an unnatural way as Ritter, Dobbins and Mazariegos tackled him down into handcuffs.

66. Obiagwu's phone will be snatched away from him as he was forcibly placed in handcuffs as he cried in pain and was aggressively thrown onto a stretcher as Mazariegos who is a medical professional not only watched but helped it happen. The seizure of the phone and backpack further proved Obiagwu was under arrest.



67.

68. Above is a picture of Obiagwu bleeding on his throbe.

69. Obiagwu showed no signs of violence or intent to do self harm or harm to others which made the handcuffs excessive force.

70. While the phone is still recording officers can be heard saying "he's so worried about his phone because he's trying to get a lawsuit." Officers will then be heard conspiring to factory reset the phone to wipe all data to get rid of evidence of assault.

71. Officers performed a full search of Obiagwu's bag without a warrant or reasonable suspicion violating his 4th amendment rights. Officers claimed they were looking for his identification with no attempt of asking him to identify himself. A reasonable officer will assume ID will be in a person's pocket or wallet but no search was done on Obiagwu's pockets for an ID. It is not reasonable that ID is located in a closed drawstring gym bag.

72. Obiagwu also identified himself to Mazariegos upon initial contact when asked for his name so there was no legal reason to perform an entire search of his bag on the side of the road. Hospital security performed search of Obiagwu's person and belongings before entry so there was no reason for police to conduct a search.

73. Mazariegos provided spit mask which is very thick and allowed Officers to forcibly place it over Obiagwu's nose and mouth forcing him to swallow all sand, dirt and debris from the curb where animals such as dogs and raccoons defecate. Mazariegos can be heard earlier stating Obiagwu had dirt in his

mouth so he had knowledge of such but intentionally did it anyway. Mazariegos is a trained licensed EMT and should know better.

74. Obiagwu's injured shoulder was intentionally kept twisted and placed behind him handcuffed with his entire body weight on top of his injury then tightly strapped to the stretcher with the metal of the cuffs piercing his lower spinal cord as the Defendant Mazariegos banged Obiagwu's knees against the wall over 7 times in retaliation for not answering questions.

75. While Obiagwu's face was covered with a spit mask and dirt all over his face he was made to lay facing up forcing him to swallow all the dirt and unable to breath properly as he kept trying to spit sand and blood but the excessive saliva gave the feeling of being weatherboarded which is a form of torture.

76. Mazariegos knowing and informed Obiagwu did not want to speak or disclose information to the police as he felt his rights were violated lied that there was no officer present in the back of the ambulance to trick Obiagwu into sharing medical record and identity information with officers who sat quietly while Obiagwu's face was covered.

77. A radio call went out with mention of a "prisoner" being brought to "CPMC." Which affirmed Obiagwu was under arrest.

78. Defendant officers and FDNY took Obiagwu to a mental health/ psychiatric hospital for mental issues instead of emergency room for injuries. Obiagwu was referred to as a "prisoner" multiple times in the hospital.

79. Mazariegos now aware of the cause of Obiagwu's injuries intentionally lied and defended the police officers by telling hospital staff  "One of them [officers] put his hand on his [Obiagwu] chest and he just dropped on his own" despise being told by Obiagwu that he was slammed by the plain clothes officer and visible bleeding on his white garment.

80. NYPD Officers spoke to hospital staff requesting a closed room.

81. Obiagwu was taken into the closed room with the door shut to hide what was being done where Defendants Mazariegos and NYP security staffs asked what part of his body hurts & would use this information to inflict pain on him by lifting him up from four points of contacts  and throwing him carelessly From one bed to another as he laid still handcuffed behind his back with his entire body weight (plus gravity force) landing on the thin metal handcuff causing extreme pain to his lower back

and shoulder as he was tossed.

82. While still in the closed room, NYPD and NYP security staff totaling about 4 men proceeded to torture Obiagwu stretching his arms up and over the top on the bed pulling and twisting his injured shoulder and after discovering his iwatch was still recording audio they stopped and deleted the recording and took off the watch aggressively by hitting him under the neck as to cause his head to now hang off the top of the bed with an elbow/forearm against his Adam's Apple pinning it with his neck off the bed unable to breath or swallow air. Note that Obiagwu still had a wet spit mask with the breathing holes filled and clogged with saliva and sand over his nose and mouth making it feel like he was being water boarded and nearly impossible to breath

83. While still in this position Obiagwu will manage to say "I CAN'T BREATH, I CAN'T BREATH" and more force will be applied to shut him up placing a hand over his mouth & nose which is already covered with a mask to stop him from breathing and screaming for help.

84. While still in this position another person placed his arm on Obiagwu's chest pressing it down, another person popping his dislocated shoulder back into place. And another person hitting and pulling his legs in the opposite direction of his head being pinned.

85. NYP security staff can be heard apologizing to his colleague for what had just happened further stating the hospital should "make up and figure out what the fuck you gon make us do through the course of the day" insinuating that "even when he tried to relax" he's assigned to do something violent. His colleague will respond with "it hasn't been too violent" and later saying "It's a violent job."

86. The Officers did not report the use of force violating NYPD policy.

87. The officers did not activate their bodycam in the hospital when force was used violating their Body cam policy

88. The officers refused to identify themselves or provide business cards.

89. The NYPD intentionally gave fictitious information to mislead Obiagwu when he came to gather information about the officers' name on a different day.

90. The officers will send threats and racial comments to Obiagwu and accuse him publicly of being a "grifter" a "known scammer" making defamatory statements against the reputation of Obiagwu which they know are untrue as they had never seen or heard of him before.

### 91. <u>NEW YORK VS. DUNAWAY:</u>

The Supreme Court held that the police violated Dunaway's Fourth and Fifth Amendment rights by picking him up and taking him without probable cause. Further explaining because picking someone up involves an intrusion on par with that of an arrest, it is held to the standard of "probable cause" rather than the lower standard of "reasonable suspicion."

Similar to the underlying case Mr Obiagwu was picked up by the responding uniformed officers and handcuffed with show of force and authority that he could not leave or temporarily step away after he attempted to speak to witnesses who watched him get assaulted. Obiagwu's identification was forcibly attained by the defendants who attempted to charge him with disorderly conduct after moving him which is on par with an arrest. Obiagwu was referred to as "prisoner" in the hospital.

## <u>CLAIMS FOR RELIEF</u>

### <u>42 U.S.C. § 1983 - First Amendment Violations of Free Speech and Assembly</u>
#### <u>(Against NYPD, NYPD officers in their individual capacity, City.</u>

92. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

93. The NYPD defendant's action to repeatedly obstruct plaintiff's camera both by entire body and with hand will chill a person of ordinary firmness from continuing to video record.

94. NYPD Defendants action to do assault to Obiagwu in response to not leaving the area constitutes violation of freedom of movement.

95. NYPD defendants' action to handcuff plaintiff for trying to speak to a nearby witness violates the first amendment.

96. Defendants attempted to erase the recording of Obiagwu which is protected by the first Amendment.

97. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 - Fourth Amendment Violations Involving Unlawful Seizure & Excessive Force
### (Against NYPD, and individual named officers)

98. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

99. Emmanuel Obiagwu was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

100.    Defendants unreasonably seized Obiagwu, thereby depriving him of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth amendments to the United States Constitution.

101.    The unlawful use of excessive force to combat the video recording by Obiagwu

102.    The unlawful use of force and seizure to stop Obiagwu from attaining witness contact.

103.    The unlawful use of excessive force by flashing a firearm to intimidate Obiagwu was highly unprofessional and would chill a person of ordinary firmness..

104.    The use of force against Obiagwu, by inflicting harm through physical force on Obiagwu's injuries in order to take him down to the ground was objectively unreasonable under any circumstances.

105.    Officers did not witness or receive any information to suggest Obiagwu was mentally I'll or showed signs of such before being forced to a psychiatric hospital in handcuffs instead of an emergency unit for his injuries which he requested at his will.

106.    As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

107.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


## Graham V. Connor 490 U.S. 386 (1989)

108.    United States of appeals ruled that in order to make a claim of excessive force are analyzed by "objective reasonable standards" factors which includes; severity of the crime at hand, possible threats posed by the suspect to the safety of others including the officers, resisting arrest or attempting to evade arrest. By these United States standards the Defendants are guilty of excessive force.


## Monell v. Dept. of social services of city of New York 436 U.S 658 (1978) violations of constitutional rights. Excessive force.

109.    The defendants reiterate that Plaintiff "dropped to the ground without anyone touching him" as repeatedly stated by Daniel Silverio, Mazariegos and Warren Ritter therefore, claiming he was a Emotional Disturbed persons (hereinafter "EDP" which prompted Plaintiff to be taken to a psychiatric hospital in restraints, masked and undressed against his will. The City caused, developed, wrote the policy or failed to create the policy that allows EDP to be treated with extreme care and gentle handling including using soft spoken words to de-escalate and verbally explain things to EDP for a safe interaction. Daniel Silverio whose job is in the warrant section has a long history and experience dealing with all forms of wanted persons or criminals and should be well equipped both strategically and in communication. Silverio was directly in front of a precinct and had the means and time to call for backup as there was no immediate danger from Obiagwu but instead got very aggressive and hands on with a potential EDP before exhausting any other means.

110.    This is not the first time Silverio has been involved in similar situations, On February 19, 2015 Silverio was found guilty of abusing his authority when he stopped, frisked and Searched a person WITHOUT legal authority and was only disciplined with a slap on the wrist with 3 days vacation. On October 2022 Silverio was accused of physical force including choking and pointing a gun at a person without justification. The Civilian Complaint Review Board (hereinafter "CCRB") concluded their investigation stating that the allegations were "unable to be determined" which goes with over 90% of complaints made against Silverio as only 5 out of 65 allegations have found him guilty. This is the fault

and direct results of the City cutting the budgets of the CCRB which limits resources and forces officers to be exonerated against every complaint due to investigations being botched.

111.    The city has failed to discipline officers with CPIs of 3.1 or higher and allowed them continued access to firearms as recommended by the RAND corporation study which directly led to Obiagwu being threatened with a firearm and other victims Silverio pointed firearm at without just cause.  As a result of the above-mentioned failures and policies, the City has a policy, procedure, custom, and/or practice of not training, providing insufficient directives, and improperly supervising its officers and supervisors in responding to situations involving EDPs

112.    In 1999, NYPD officers shot and killed Gidone Busch, who was bipolar.

113.    In 1984, Eleanor Bumpurs was deemed psychotic and shot and killed in the process of trying to evict her.

114.    A 2008 study by RAND recommended that NYPD should document and train officers decision making skills and use of force tactics ensuring that officers pass proficiency standards. The NYPD have disregarded this research and allowed officers to freestyle whatever method of dealing with EDPs they like including using guns and tasers when simply using time and patience can work.

115.    The failure of NYPD officers to follow the EDP policies in effect at the time of the incident and their failure to adequately supervise the officers under their commands contributed to Plaintiff's injuries.

116.    Plaintiff's mouth and nose were covered with mask designed so thick that liquid and air can't pass through effectively while plaintiff was faced up, handcuffed and strapped on a stretcher making it impossible for him to adjust the discomfort which is highly dangerous and have led to numerous deaths among police officers in recent years. In 2012, NYPD officers suffocated and killed EDP Shauna Francis in Queens New York. On July 17 2014 NYPD officers choked Eric Garner to death which led to the Commissioner at the time William Bratton to issue retraining on use of force and de-escalation. It is clear that these trainings are no longer enforced or only taken seriously when a story of a detainee losing their life goes viral.

117.    On September 14, 2013, NYPD officers shot at an EDP identified as Glenn Broadnax, injuring two tourists in midtown in the process.

118.    CCRB reported that in 2023 which is the Year plaintiff was injured, the 33rd precinct had a 94.87% increase in complaints of officers which reflects the lack of discipline and leadership.

119.

## 42 U.S.C. § 1983-Conspiracy to Deprive Civil Rights
### (Against NYPD officers and NYP security staff

120.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    Defendants, acting in their individual capacities and under color of law, conspired together and with each other, and reached a mutual understanding to undertake a course of conduct that violated Obiagwu's civil rights.

122.    In furtherance of this conspiracy, Defendants committed overt acts, namely:
    a.  While acting in concert took Obiagwu into a closed room in the psychiatric hospital and forced medical procedures on him
    b.  Defendants used excessive force when they elbowed and choked Obiagwu's neck while covering his mouth and nose to force him to keep quiet.

123.    Defendants discussed how they will force erase plaintiffs phone to wipe the video evidence that shows his rights were violated.

124.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 42 U.S.C. § 1983 - Fourteenth Amendment Violations of Due Process and equal protection
### (Against NYPD. And its officers in individual capacity)

125.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.     Plaintiff was not provided equal protection of the law.

127.     Defendant NYPD had policies that violate the first amendment stopping the filming of government property and activity that are of public interest.

128.      Defendants' intentional action in preventing gathering of witness information narrows the Plaintiff's due process rights under the Fourteenth Amendment.

129.     Defendants attempted erasing video evidence of the incident from plaintiffs mobile phone to obstruct justice.

130.      Defendants acting in bad faith showed unfair treatment to Plaintiff due to his islamic attire.

131.     Defendants referred to Plaintiff as a monkey which at a bare minimum proves their lack of care for plaintiff's rights and injuries as opposed to if he were of a different religion or race.

132.     Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

133.     As a result of Defendants' actions, Plaintiff has suffered damages beyond what any amount of money can repair.

### Eight Amendment violation:Cruel &unsuual punishment
### (Against NYPD, NYP, City and its officers in their individual and official capacity)

134.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.    Plaintiff was lifted up and slammed to the ground causing injuries and then tortured by twisting and knowingly applying force directly to his injury to gain control over him, strapping his body with double restraints and mouth covered also with restraints .

136.    Plaintiff was taken into a private room in the hospital to be tortured and choked till he begged for his life while his head hung over the bed as he was struck repeatedly and later being stripped against his will.

137.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### 42 U.S.C. § 1983 Retaliatory arrest in violation of the First Amendment
### (Against NYPD and its officers in their individual and official capacity)

138.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

139.    The individual Defendants made the decision to handcuff and force Obiagwu to a psychiatric hospital in retaliation after Obiagwu engaged in constitutionally protected video gathering.

140.    Additionally, Defendants' actions described herein have had a chilling effect on Obiagwu, who is now less likely to report on police activity out of fear of further unconstitutional treatment .

141.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### 42 U.S.C. § 1983 - Supervisory Liability
### (Against NYPD, FDNY and the city of NY)

142.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

143.    The 33rd precinct supervisors were aware of the incident and failed to act as they were informed but instead sent officers to escalate the situation.

144.    The supervisors acted under color of law when approving the use of handcuffs and force.

145.    They supervisors had over 30 minutes to access the situation but allowed plaintiff to be viciously taken down to the ground and handcuffed.

146.    The supervisors knew that Daniel Silverio was violating plaintiff rights by stopping him from recording but defended Silverio's actions.

147.    Failure to terminate Silverio who has over 65 allegations of violence and abuse of authority

148.    Failure to train officers on first amendment rights

149.    NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to cover up for using force on innocent civilians who resist unlawful orders.

150.    FDNY failure to train EMS on patient's right

151.    FDNY failures to train EMS on decision making and taking lead regarding what's medically best when working along NYPD

152.    FDNY handles hundreds of thousands of EDP cases yearly and should be better trained on how to treat whoever is believed to be unstable with extreme care and caution which EMT failed to do.

153.    The supervisor subordinates' failure to correct each other shows lack of leadership further violating plaintiff's rights.

154.    The supervisors of NYPD further prevented the acquisition of officers name and operating command by providing wrongful information contradicting other supervisors of the same department.

155.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**42 U.S.C. § 1983: Municipal Liability**

(Against the City of Ny, NYPD, FDNY)

156.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

157.   Defendant City is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the remaining Defendants' violation of Obiagwu's rights because the violations were caused by a policy, practice, or custom of the New York city Police Department. Among the NYPD policies, practices, or customs that caused constitutional harm to Obiagwu are the following:

158.   The rule "No recording allowed inside police property/station" which have made officers believe citizens do not have a right to document government property or activity caused the entire incident with Obiagwu. This city wide policy has now been repealed in court in Sean Reyes V. NYPD

159.   NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to cover up for using force on innocent civilians who resist unlawful orders.

160.   NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly forcing people to psychiatric hospitals without reasonable suspicion of mental illness to justify searching innocent civilians property incident to hospital check-in.

161.   Defendant City has inadequately trained, supervised plain clothes officers on identifying themselves as officers with a proof of name, shield number or ID.

162.   Defendants City and NYPD have failed in disciplining and terminating officers such as defendant Daniel Silverio who acquired over 65 complaints and accusations of violence, excessive force involving firearm and other civil rights violations.

163.   Additionally, NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

164.   FDNY history and practice of blindly trusting word of officers over their own medical knowledge and procedure.

165.   FDNY practice of supporting and defending NYPD officers over the well being of patients

166.    That the City's policies, procedures, customs, and practices encourage its officers to falsify evidence and commit perjury.

167.    **Schoolcraft v. City of New York, 10-CV-6005 (RWS) (S.D.N.Y.):** police officer alleges that he was arrested and committed to a psychiatric facility in retaliation for exposing an NYPD precinct's policies and practices of summons and arrest quotas, falsifying evidence and police records, perjury.

168.    **Lin v. City of New York, 09-CV-1936 (PGG) (S.D.N.Y.):** officers arrested civilian for photographing an arrest of a bicyclist and signed criminal complaint with facts contradicted by video evidence.

169.    **Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.):** the Eastern District Court held that the police officer had established proof of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department

170.    **People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.):** Nypd officer intentionally swore a false complaint and got convicted for forging police records.

171.    On October 9, 2013, Civilian Complaint Review Board Deputy Executive Director Marcos Soler wrote to the Board Members of the CCRB that from January-August 2013, the NYPD declined to prosecute 29% of all substantiated CCRB cases against its officers.

172.    FDNY personnel Mazariegos had direct knowledge that plaintiff said he was slammed to the ground by officers but told hospital staff that plaintiff threw himself to the ground with no prior incident in effort to defend the NYPD. Due to this misrepresentation of facts plaintiff will be checked in hospital for mental stability instead of physical injuries as he was too traumatized to speak.

173.    As a direct result of the Defendant City's failures and policies as described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear,

apprehension, depression, anxiety, consternation and emotional distress; lost time; loss of employment opportunity; and loss of faith in society., including mental anguish, physical harm, pain, and suffering.

**NY State law: intentional use of force.**

(Against Daniel Silverio, Warren Ritter, Brian dobbins, unnamed officers, NYPD)

174.    Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

175.    Defendants' actions were intentionally reckless and did whatever they felt they wanted to prevent Obiagwu from recording.

176.    Such actions by Defendants have caused Mr. Obiagwu severe emotional distress.

177.    Defendants' sole motivation was to cause emotional distress to Plaintiff in retaliation for disregarding his unlawful orders.

178.    As a direct result of the conduct of Defendants described herein, Mr. Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress. In addition; loss of employment opportunity; and loss of faith in society.

179.    Further, Mr. Obiagwu was reasonably in fear for his own person because of the actions of Defendants

180.    Defendants had information that plaintiff was injured when they proceeded to twist his injury  and handcuff him.

181.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Assault and battery.**

(Against all Defendants)

182.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

183.    During the process of being unconstitutionally arrested, Obiagwu suffered assault and battery at the hands of Defendants.

184.    Defendant Daniel Silverio repeatedly did assault and battered Obiagwu by shoving, slapping and slamming him against the curb

185.    Defendant Warren Ritter, unnamed officers did assault and batted Obiagwu when they twisted the arm he informed was injured in order to force him to the ground.

186.    Defendants committed battery when they elbowed and choked Obiagwu who was already restrained by four men on the hospital bed.

187.    As a direct result of the conduct of NYPD and its police Defendants action, Obiagwu suffered a dislocated shoulder, extreme lower back pain, bleeding in the mouth, and more injuries.

188.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY state law: Tampering with evidence with intent.**

(Against NYP, NYPD, Brian Dobbins, Warren Ritter.)

189.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

190.    Defendant officers forcibly stopped Obiagwu from evidence gathering and attempted to intentionally erase the video of the assault by resetting his phone.

191.    Defendants officers and NYP security successfully erased audio recording on Obiagwu's watch after making remarks that "everybody wants to sue us."

192.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


### NY state law: Tampering with witness
### (Against NYP, NYPD, Brian Dobbins, Warren Ritter and Mazariegos.)

193.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

194.    Defendants all collectively conspired and acted together to make sure Obiagwu does not acquire witness information that can testify on his behalf.


195.    Defendants used force in the commission of the crime and made an unlawful arrest to make sure the witness are gone with no means to be reached.


196.    NYPD officials at 33rd precinct lied and misled Obiagwu with fake names of witness officers to prevent information gathering.


197.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


### NY law: Obstruction of Justice
### (Against NYPD)


198.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

199.    Defendants NYPD gave Obiagwu wrong information to mislead and Obstruct complaint and disciplinary process of fellow officers.


200.    NYPD refused to gather information from witnesses of a crime they responded to and prevented Obiagwu from attaining witness's contact to prevent any testimony against theirselves.

201.     Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


## NY law: conversion

### (Against NYPD)

202.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

203.     Mr.Obiagwu's pocket knife was seized by NYPD officers during his wrongful and unconstitutional arrest.

204.     Obiagwu was the owner of the pocket knife.

205.     Defendants took possession of the property without Mr.Obiagwu's permission.

206.     Defendants deprived him of the right of possession.

207.     Defendant deprived him of the 2nd amendment right to defend himself

208.      Obiagwu have made demand on Defendants to return the knife with no success

209.     Defendants have failed to provide the return of the knife, after such demand has been made.

210.     Obiagwu was injured as a result of these actions in the form of actual damages for the purchase value of the knife, as well as for the loss of use of the knife

211.     Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


## NY law; Medical malpractice

### (Against FDNY, NYP, NYPD and its officers in individual capacity.)

212.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

213.    FDNY acting in bad faith intentionally gave wrongful information to hospital claiming Obiagwu fell to the ground himself without being touched after being informed on what really happened and refusing to get details from witness

214.    FDNY assaulted Obiagwu by banging his knees against the wall for refusing to answer further questions in the ambulance.

215.    FDNY allowed and helped NYPD take Obiagwu to the ground and force a spit-mask forcing him to swallow dirt.

216.    FDNY helped throw Handcuffed Obiagwu from one bed to another in an aggressive manner without attempting to talk to Obiagwu or placing both beds next to each other for better human transfer of bed.

217.    defendants including NYP securities knew they do not possess medical license when they practiced unauthorized medical procedure on Plaintiff

218.    NYP nurses gave authorization, allowed and provided a room for Obiagwu to be tortured in by non-medical staff,

219.    NYP's Nurses refused or should have been present for any procedures being performed in the closed room.

220.    NYP knew these actions were taking place and did not intervene under the scope of their facility

221.    Other NYP staffs refused to intervene upon hearing a grown man cry for help which is enough reason to at least take a look or make inquiries

222.    The Nurses did not or should have examined Obiagwu's mental state before allowing ANY procedure to confirm if he is an EDP or not.

223.    NYP's doctor and nurses were informed by the plaintiff what had just happened involving their hospital security and took no action.

224.    NYP were short on nurses, doctors and medically trained staff in a department that should be a priority but instead had a lot security staff whose only job skill is to use force.

225.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law; Hate speech, racism and discrimination**
<u>(Against Warren Ritter, Daniel Silverio and NYPD)</u>

226.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

227.    Officer Ritter's act and choice of words are no coincidence when he refers to plaintiff who is an African as a monkey.

228.    There's no doubt that the main reason Silverio acted with such hate and aggressiveness towards plaintiff was greatly due to his religious attire and the stigma associated with the people of Islamic beliefs.

229.    The comments of Ritter were so inflammatory that apps such as TikTok removed the videos for "Hate speech" and "abusive behavior"

230.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**NY law; false imprisonment and false arrest**
<u>(Against all defendants)</u>

231.    Plaintiff was detained and by show of authority arrested when he attempted to get contact of witnesses.

232.    Plaintiff was not free to leave or to decline forced medical assistance.

233.    Plaintiff was not free to choose an hospital he should be taken to and was handcuffed to the stretcher.

234.    Plaintiff was referred to as "prisoner" to the hospital and on a radio call further proving he was arrested.

235.    Although plaintiff was never formally charged he remained in police custody even after an hour in the hospital.

236.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


### NY law; Criminal tampering, tampering with evidence and witness tampering
#### (against NYPD, Brian Dobbins, Warren Ritter, Unnamed officers and NYP security staff)

237.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

238.    Brian Dobbins, Warren Ritter and unnamed NYPD officers acting with intent to cover up a crime and obstruct judicial procedures prevented Obiagwu from getting statements and contacting witnesses.

239.    Brian Dobbins, Warren Ritter and unnamed NYPD officers acting with intent to cover up a crime and obstruct judicial procedures handcuffed Obiagwu when he attempted to speak to witnesses.

240.    Brian Dobbins, Warren Ritter and unnamed NYPD officers acting with intent to cover up a crime and obstruct judicial procedures conspired and attempted to factory reset Obiagwu's mobile phone to delete the evidence of crime against them.

241.    Brian dobbins. Warren Ritter and unnamed NYPD officers while having no right to do so or any reasonable ground to do so tampered with Obiagwu's property including;
   A.  Forcibly taking his mobile phone away from him in a way that cause injury…
   B.  Operating his mobile phone device without consent in an attempt to cause injury to the contents of the phone.
   C.  Taking his backpack and belongings away from him with force.
   D.  Going through his backpack and purse without consent

242.    NYP security staff and unnamed security agency with intent to obstruct judicial procedures deleted audio recording of assault on Obiagwu's iwatch and states "everybody wants to sue us."

243.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**<u>NY law; Defamation of character and slander.</u>**

<u>(Against NYPD, Brian Dobbins, Warren Ritter, unnamed officers)</u>

244.    Multiple NYPD officers from 33rd precinct will go on social media intentionally making false statements against Plaintiff without any evidence.

245.    Officers made over 50 comments on multiple posts on Plaintiff's TikTok account accusing and referring to him as "a scammer"

246.    Officers would message friends and followers of Plaintiff spreading false statements in retaliation for Obiagwu speaking out about the assault by NYPD

247.    Some comments by Brian Dobbins and other NYPD officers will falsely call Plaintiff a fraud without any evidence such as;

 "This guy is a fraud, he's a known fake"

"He's a known fake, Get a job and stop wasting taxpayers dollars"

"TikTok is deleting his videos because they're finding out this guy is a known fraud"

"I'm not an advocate of abuse but this guy is a known fraud"

"He's a fraud why do think he's covering his face"

"He's a known in NY for being a fraud"

"He's a known fraud"

"Let us all report the [plaintiff] videos so TikTok takes it down for fraud"

"He makes his money from ill gotten gains"

"he's done this before to get paid by making fake videos"

"He can't press charges he's a fraud"

"He's checking the police van doors to see if they're open"

"He was trying to break into the police vehicles"

"He was breaking into police vehicles"

"He's known for breaking into vehicles in NY"

"You're coward sir"

"We should be mad at this guy for playing us"

"Allah doesn't like scammers stop the b/s"

And many more defamatory statements viewed by hundreds of thousands of people.

248.    It should be noted that at the time of this occurrence and at the time of the creation of this complaint Obiagwu has never filed a lawsuit against NYPD or any governmental agency or ever collected any compensation from NYPD or any government agencies making those statements by NYPD officers false.

249.    Racist and offensive comments made by the NYPD officers such as Ritter influenced hundreds of people to Spew hateful things on Obiagwu's social media account such as ;

"Black culture (laughing emoji) monkeys can't live a civilized society"

"I'm pretty sure you [Plaintiff] are mentally ill"

"U [plaintiff] seem mentally ill"

"He [plaintiff] cries like a monkey"

## **PRAYER FOR RELIEF**

1.Judgment for compensatory damages; including damages for emotional distress, humiliation, loss of enjoyment of life,defamation and other pain and suffering on all claims allowed by law in an amount into be determine by a jury;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against all individual Defendants;

F. pre- and post-judgment interest at the lawful rate; and,

2. Judgment for exemplary or punitive damages;

3. Cost of suit; attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

4. Monetary rewards for missed work opportunity

5. Any further relief that this court deems just and proper, and any other appropriate relief allowed by law and equity.

6. Wherefore Plaintiff prays for judgment against all defendants for their respective role.

7. Plaintiffs prays that this court impanel a lawful jury to hear this case.

## <u>PUNITIVE DAMAGE</u>

The actions of Defendants as described above were carried out in bad faith and with malice, and done with intent to cause injury. Defendant Daniel Silverio who assaulted Obiagwu has over 65 civilian complaints involving use of force and firearm intimidation. Punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

Submitted by;

/s/ Emmanuel Obiagwu.
908-708-4090
EmmanuelObiagwu@gmail.com

_____

May, 25 2025